# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LONNIE STARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 15-284-JHP-SPS |
| ROBERT PATTON, et al., | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915. Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) is incarcerated at John Lilley Correctional Center in Boley, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations during his incarceration at Mack Alford Correctional Center in Atoka, Oklahoma (MACC) and Howard McLeod Correctional Center (HMCC) in Atoka, Oklahoma. The defendants are Robert Patton, DOC Director; Tommy Sharp, HMCC Warden; Randy Holland, D.D.S., DOC Chief Dental Officer; and Brandi Birchfiled, HMCC Health Services Administrator.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-

pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558. The Court applies the same standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) that is employed for Fed. R. Civ. P. 12(b)(6) motions to dismiss for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendants' motion.

**Background**

Plaintiff alleges that on April 3, 2014, he was working at MACC, assigned as a

Department of Transportation crew worker.[1] On that date, the DOC van in which he was a passenger was involved in a collision with a semi truck, after the van driver made an illegal U-turn. Plaintiff and four other occupants were transferred by medical helicopter to a trauma center in Oklahoma City, with the other occupants taken to local hospitals by ambulance. (Dkt. 1 at 3).

Plaintiff asserts his upper and lower teeth were severely damaged or destroyed as a result of the head trauma he received in the collision. While in intensive care, Defendant Robert Patton, the DOC Director, visited with him and the other victims of the collision. During the visit, Patton allegedly assured Plaintiff the DOC would get his teeth restored to their previous condition, stating that "we owe you some new teeth." Plaintiff complains Patton's statement never was fulfilled. *Id.* at 2-4.

Upon his hospital release, Plaintiff was returned to MACC where he repeatedly requested repair or replacement of his teeth. *Id.* at 4. On April 9, 2014, he filed a grievance to Warden Jerry Chrisman, stating something needed to be done about his teeth, because he could not eat. *Id.* at 17. The response, dated April 16, 2014, stated that arrangements had been made for Plaintiff to be evaluated by Defendant Dr. Holland on that date. *Id*. at 18. Plaintiff apparently received treatment, including stainless steel crowns which he considered "temporary," prior to May 1, 2014.

On May 1, 2014, he filed a Request to Staff (RTS), asking whether he would receive root canals and two permanent white porcelain crowns to replace the temporary crowns on his two front teeth. *Id.* at 16. He also inquired about replacement of the teeth that were pulled because of the accident. *Id*. The May 6, 2014, response by Dr. Holland stated:

---

[1] The attached Official Oklahoma Traffic Collision Report indicates the accident occurred on March 4, 2014 (Dkt. 1 at 11).

> We are going to do pulp vitality testing on your two front teeth. If the nerves are dead we will do root canals and crowns. If the nerves are alive will do fillings. We do not do permanent crowns in DOC so if crowns are required we will send you to an outside dentist.

*Id.*

On May 9, 2014, Plaintiff submitted a Request for Health Services, asking when his next appointment would occur. *Id.* at 19. The request stated that the broken areas on his three front teeth were beginning to "turn colors." *Id.* The response dated May 13, 2014, stated Plaintiff would be scheduled when the dentist returned. *Id.*

On June 16, 2014, Plaintiff again submitted a Request for Health Services. *Id.* at 20. The request stated that the filling on his right front tooth had fallen out, and he needed help. *Id.* The June 17, 2014, response stated that the request had been sent to dental. *Id.* Also on June 17, 2014, Plaintiff submitted another Request for Health Services, asking to have the rest of his dental work completed and advising that his lower front tooth needed to be fixed. *Id.* at 21. The response advised that Plaintiff had an appointment on July 10, 2014. *Id.*

On September 25, 2014, Plaintiff submitted a Request for Health Services, again stating that one of the fillings in his right front tooth had fallen out. *Id.* at 22. The September 29, 2014, response stated that Plaintiff was on the list for an exam. *Id.*

Plaintiff alleges that after numerous requests for a dental appointment, he only received fillings which fell out. *Id*. at 4. When he again requested to see the dentist, he was advised that he would be fitted for partial plate dentures. *Id.* On December 17, 2014, Plaintiff sent two Requests for Health Services to Dr. Holland, inquiring about when he could be fitted for the partial plate and stating that it was beginning to be painful when he chewed. *Id*. at 23-24. He further stated that it was difficult for him to eat with "just one tooth." *Id*. at 23. The responses advised that Dr. Holland would try to see Plaintiff for fillings, which

4

were required before impressions for the partial plate could be done. *Id*. at 23-24.

On April 9, 2015, Plaintiff filed a Request for Health Services, advising Dr. Holland that there was something wrong with his partial plate, and he was unable to eat with it. *Id.* at 25. The response stated Plaintiff was on the list for an exam. *Id*. On April 15, 2015, Plaintiff submitted a another request, again stating he could not eat with the partial plate. *Id.* at 26. The response advised that Dr. Holland was out of the office, however, Plaintiff would get an appointment upon Dr. Holland's return. *Id.*

On April 24, 2015, Plaintiff filed an RTS to Defendant Brandi Birchfiled, HMCC Health Services Administrator, asking for permanent replacements of his missing teeth to resolve his dental problems. *Id.* at 27. Ms. Birchfield's May 1, 2015, response stated, "already addressed." *Id.*

At this point, Plaintiff believed the Defendants were not going to help him with his dental needs necessitated by the negligence of the DOC van driver. *Id.* at 5. On May 7, 2015, Plaintiff filed Offender Grievances to Defendants Spark and Birchfield, asking whether DOC was going to repair his teeth. *Id.* at 28-29. On May 15, 2015, the appeals of the grievances were returned unanswered by the acting warden's assistant as untimely, because the grievances were related to the collision on March 4, 2014. *Id*. at 5, 32-33. In addition, Plaintiff's RTSs were not submitted to and answered by the appropriate staff member. *Id.* at 32-33.

Plaintiff also sent grievances to Defendants Spark and Birchfield on May 8, 2015, stating he needed permanent crowns and permanent teeth for the teeth that were damaged or destroyed by the accident. *Id.* at 30-31. The appeals of the two grievances were returned unanswered for having voluminous attachments, and the appeal of the grievance to Defendant Sharp also was out of time. *Id*. at 34-35.

5

Plaintiff again attempted resolution of the problem by filing another RTS to Defendant Sharp on May 19, 2015. *Id*. at 36. The response stated, "[p]er Warden Sharp this issue has been addressed numerous times and will not be addressed any further." *Id*. Plaintiff appealed to the DOC Administrative Review Authority, which also denied relief on May 28, 2015 as follows:

> I spoke with Dr. Holland regarding this issue. Dr. Holland has indicated that the Department has already placed Stainless Steel Crowns on offender Starks' teeth that needed them. This is done when there is too much missing tooth structure to restore the tooth with a filling. You are requesting us to replace them with porcelain crowns, however by policy, we do not place those types of crowns.
>
> You also want the lower left wisdom tooth that had to be extracted after the accident replaced. The lower left second molar is also missing, but that was a pre-existing condition at the time you came into DOC. We essentially replaced the lower second molar with a removable partial denture to take the place of the lower left wisdom tooth, but you returned the partial denture stating that it was going to damage you're [sic] other teeth and did not want it. You are also requesting an implant and a crown to replace the tooth. Even in a private practice situation, a wisdom tooth would not normally be replaced.
>
> According to Dr. Holland, all of the offender's teeth that were affected by the accident have been restored according to our dental policy OP-140124 Entitled, "Dental Services."

*Id.* at 38-39.

The DOC Medical Services also sent Plaintiff a letter dated July 6, 2015, stating his Offender Grievance form was not timely. *Id*. at 41. In addition, the grievance form had not been sent to the health services administrator at the facility where the grievance occurred. *Id*.

Plaintiff maintains the history of denying his attempts at relief constitutes deliberate indifference to his serious dental needs, in violation of the Eighth Amendment. He claims he has suffered severe pain, difficulty and inability to eat, and mental stress from "the constant reminder of this traumatic incident with every painful bite, and every time he looks

6

in a mirror." *Id.* at 7.

**Eleventh Amendment Immunity**

The four defendants in this action are DOC employees who allege they are entitled to Eleventh Amendment immunity. An official capacity claim against an Oklahoma official is actually a claim against the State of Oklahoma. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1988). "[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages." *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F .3d 1186, 1196 (10th Cir. 1998). Absent a waiver by the state, or a valid congressional override, the amendment bars a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Here, the defendants have not waived their Eleventh Amendment immunity. Therefore, the defendants in their official capacities are dismissed from this action. Because the Eleventh Amendment involves sovereign immunity, the official-capacity claims are dismissed "without prejudice" rather than "with prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

**Personal Participation**

Defendants Warden Tommy Sharp and Brandi Birchfield allege Plaintiff has failed to show they personally participated in any of the alleged constitutional violations. The only actions Plaintiff complains of by Defendants Sharp and Birchfield concern their grievance responses.

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967

7

F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id*. *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Furthermore, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted). Therefore, Plaintiff has failed to show Defendants Sharp and Birchfiled personally participated in the alleged constitutional violations.

**Failure to State a Claim**

The defendants further allege Plaintiff has failed to state a claim upon which relief may be granted under the Eighth Amendment. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been

8

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

In *Fresquez v. Minks*, 567 F. App'x 662 (10th Cir. 2014) (unpublished), the Tenth Circuit found there could be a sufficiently serious dental condition when the prisoner plaintiff had "broken teeth to the roots/nerves with chronic pain and suffering," and was without treatment, despite and health care employees' awareness of his injury. *Id*., 567 F. App'x at 667-68. In *Conley v. McKune*, 529 F. App'x 914 (10th Cir. 2013), the Tenth Circuit found objective evidence of a sufficiently serious dental condition where the prisoner alleged:

> [His] teeth are overlapped, bucked, crowded and crooked to the point [he] chew[s] holes on the insides of [his] cheeks causing pain and bleeding. [H]is pain [is] intense and chronic. . . . [T]he spacing of [his] teeth results in a speech impediment, clogs his sinuses, and prevents him from correctly chewing food, closing his mouth, and holding in saliva. Further, [l]arge food particles get caught between and behind [his] teeth and . . . dislodge in [his] throat, causing him to choke. . . . [H]e lives with the constant fear of choking to death in his sleep.

*Id.*, 529 F. App'x at 920 (internal citations and quotations omitted). In addition, the prison dentist in *Conley* allegedly stated Mr. Conley "needed cosmetic restorative dental procedures to 'preserve [his] life.'" *Id*. Mr. Conley alleged he did not receive the recommended orthodontic care "and was told such care was not allowed, even though DOC Internal Management Policy and Procedure . . . allow[ed] for orthodontic care in some circumstances." *Id.*

9

After careful review of the record in Plaintiff's case, the Court finds the acts and omissions complained of by Plaintiff do not show deliberate indifference to his dental needs as alleged. While his dental injuries could have been considered sufficiently serious immediately after the accident, his treatment began in the month following the accident.

Plaintiff complains of missing teeth in his lower jaw. One tooth was missing prior to his incarceration, and the other was a wisdom tooth extracted after the accident. (Dkt. 1 at 38). A dental implant for a missing wisdom tooth would not be placed even in a private dental practice. *Id.* A removable partial denture was provided instead, although Plaintiff later returned it. *Id.* His two teeth that were damaged beyond restoration were preserved with stainless steel crowns. *Id.* His only complaint about the crowns is that they are not made of white porcelain. *Id.*

It is clear from the record that dental care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and [treatment] . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent plaintiff is complaining about the inadequacy of the care provided, the Court finds Plaintiff is merely asserting a difference of opinion as to the kind and quality of treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein. *See also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care--not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the

doctor's medical judgment in treating a condition with a certain medication rather than others).

Plaintiff claims the delay in receiving treatment resulted in a sufficiently serious condition. Delay in providing medical care, however, does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Here, the Court finds the delay in Plaintiff's case did not constitute substantial harm that satisfies the objective prong. *See Beem v. Davis*, 289 F. App'x 305, 307 (10th Cir. 2008) (unpublished) (holding prisoner did not establish that delay in receiving a new upper dental plate resulted in sufficient harm to constitute a deprivation of constitutional dimension, although prisoner claimed he could not eat as well without an upper plate).

As for Plaintiff's complaint that he is dissatisfied with the appearance of the stainless steel crowns, which he wants replaced with white porcelain crowns, the Court finds his desire for an elective, cosmetic procedure does not constitute a claim for deliberate indifference to a serious medical or dental need. *See Keith v. Hines*, No. CIV-05-72-M, 2008 WL 723704, at *3-*4 (W.D. Okla. Mar. 14, 2005) (finding prisoner's conclusory allegations regarding request for cosmetic reconstructive surgery which was not medically feasible was at most "a mere difference in medical opinions").

11

**Injunction**

Plaintiff has requested injunctive relief in the form of requiring the defendants and the DOC to provide dental care to restore his teeth to their condition before the collision. (Dkt. 1 at 9). To be entitled to injunctive relief, the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). Plaintiff, however, has failed to plead any facts to sustain a finding of an ongoing constitutional violation. Therefore, he is not entitled to injunctive relief.

**Conclusion**

Based on the foregoing reasons the Court finds the allegations in Plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The Court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the Court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** Defendants' motion to dismiss (Dkt. 36) is GRANTED, and this

action is, in all respects, DISMISSED for failure to state a claim. This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 11th day of March, 2019.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma